UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ERIC R.,[1]

                                            Plaintiff,         **DECISION AND ORDER**

v.                                                              6:22-cv-6585-JJM

COMMISSIONER OF SOCIAL SECURITY,

                                            Defendant.
_____

        Plaintiff brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of the Commissioner of Social Security that he was not disabled. Before the court are the parties' cross-motions for judgment on the pleadings [6, 7].[2] The parties have consented to my jurisdiction [9]. Having reviewed their submissions [6, 7, 8], this action is remanded to the Commissioner for further proceedings consistent with this Decision and Order.

## BACKGROUND

        The parties' familiarity with the 519-page administrative record [5] is presumed. On October 7, 2020, plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income, alleging anxiety and gastrointestinal issues. Administrative Record [5] at 49. Plaintiff's claim was initially denied on February 10, 2021, and upon reconsideration on May 4, 2021. Id. at 15. Plaintiff requested a hearing. Id.

---

[1]     In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]     Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering. All other page references are to the CM/ECF pagination.

A.     **The Hearing**

On December 17, 2021, Administrative Law Judge ("ALJ") Jeremy G. Eldred conducted a telephone hearing. Id. at 30-46. Plaintiff was represented by an attorney. Id. at 30. At the hearing, plaintiff testified that his problems with anxiety began in seventh grade, and it would make him feel sick to the extent that he would sometimes have trouble leaving the house. Id. at 36. In 2019, he was employed with his father's construction business, but would still experience bouts of anxiety that would leave him unable to do anything, at which times he would need to sit in the truck or need to be taken home. Id. at 35-36. He was taking Seroquel and hydroxyzine for anxiety, but was not currently in counseling. Id. at 37-38. He would help take care of his niece and nephew, work out, play games with his dad, and drive to get prescriptions or go to the bank. Id. at 38. He was completely unable to leave the house about three days per week. Id. at 39.

A vocational expert testified that a hypothetical person who could perform a full range of work at all exertional levels, but could understand, remember, and carry out only simple and routine instructions; concentrate, persist, and maintain pace in a work setting to the extent necessary to perform only simple and routine tasks; interact no more than occasionally with supervisors, co-workers, or the public; and can appropriately adapt to ordinary changes in an unskilled occupation that involves only simple and routine tasks could perform various jobs existing in the national economy. Id. at 44-45. However, she testified that more than 10% time off task, or more than one absence per month, would not be tolerated by an employer. Id. at 45.

B.     **The ALJ's Decision**

On November 12, 2021, ALJ Eldred issued a Notice of Decision denying plaintiff's claim. Id. at 15-25. ALJ Eldred noted that plaintiff's earliest eligibility date was July

1, 2019. Id. at 15-16. He found that plaintiff had severe impairments of anxiety disorder, social phobia, and obsessive-compulsive disorder. Id. at 18. He considered the "Paragraph B" criteria for mental disorders and determined that plaintiff had moderate limitations in the broad area functional categories of: understanding, remembering, or applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting or managing oneself. Id. at 18-20.

ALJ Eldred found that plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, except that he can understand remember, and carry out only simple and routine instructions; can concentrate, persist, and maintain pace in a work setting to the extent necessary to perform only simple and routine tasks; can interact no more than occasionally with supervisors, co-workers, or the public; and can appropriately adapt to ordinary changes in an unskilled occupation that involves only simple and routine tasks. Id. at 21. ALJ Farrell found that plaintiff had no past relevant work, but found that he could perform other jobs that exist in significant numbers in the national economy based on the vocational expert's testimony. Id. at 23-24. Accordingly, he found that plaintiff was not disabled. Id. at 25.

C.     **Relevant Record Evidence**

In reaching his determination, ALJ Eldred reviewed plaintiff's testimony, treatment records, and medical opinions. Id. at 34-37. He referenced plaintiff's self-authored Function Report, in which plaintiff indicated that he was able to manage his own medications and personal needs, can pay attention for "a while", can follow instructions, perform housework, complete tasks, handle money, "adapt pretty well", and can get along with others including authority figures. Id. at 22, 266-70. He also characterized status examination findings in recent primary care records to reflect that, despite an anxious affect, plaintiff had a cooperative attitude,

has clear and fluent speech, is alert and oriented, has intact memory skills, and has a normal attention span and concentration level. Id. at 22 (citing id. at 485, 495, 504, 507).

In January 2021, Mary Ann Moore, Psy.D. performed a consultative examination of the plaintiff. Id. at 472. Plaintiff reported taking clonazepam, fluvoxamine, and quetiapine fumarate for mental health, as well as pantoprazole for stomach issues. Id. at 472-73. He also reported difficulty sleeping, loss of appetite, feelings of sadness, increased anxiety, and hopelessness. Id. at 473. He stated that his anxiety and fear of vomiting has led to panic attacks and seclusion. Id. When he felt overwhelmed, he picked at the skin on his fingers. Id. He had not left the house in two months. Id. at 474. He denied suffering any trauma or abuse. Id. He felt that his memory and concentration were "fairly good". Id. Dr. Moore assessed plaintiff as generally cooperative and his manner of relating adequate, though he was "quite anxious". Id. His speech was fluent, his thought processes were coherent, his memory skills were intact, and his cognitive function was average. Id. at 475. Dr. Moore assessed his attention and concentration as "[i]mpaired due to anxiety" and that his judgment "[a]ppears very poor with depression, anxiety, and agoraphobia". Id.

Dr. Moore diagnosed plaintiff with emetophobia,[3] generalized anxiety disorder, panic disorder without agoraphobia, and persistent depressive disorder, and opined that these examination results were "consistent with psychiatric issues which may significantly interfere with the claimant's ability to function on a daily basis". Id. at 477. She assessed plaintiff with "moderate to marked" limitations with respect to using reason and judgment, sustaining an ordinary routine and regular attendance, interacting adequately with others, regulating emotions,

---

[3] Emetophobia is an intense and irrational fear of vomiting. See Cleveland Clinic, Emetophobia: Fear of vomiting, https://my.clevelandclinic.org/health/diseases/25115-emetophobia-fear-of-vomiting (last reviewed on July 3, 2023).

controlling behavior, and maintaining well-being. Id. at 476. Dr. Moore further assessed plaintiff with mild limitations in awareness of normal hazards; mild to moderate limitations in maintaining personal hygiene and personal attire; and moderate limitations regarding sustaining concentration and performing tasks at a consistent pace. Id. She opined that plaintiff showed no limitation in understanding, remembering, and applying simple or complex directions or instructions. Id. ALJ Eldred found Dr. Moore's opinion - except with respect to the findings of marked limitations - to be supported by detailed findings from her mental status examination of plaintiff and consistent with the record evidence regarding activities of daily living, mental status findings from recent primary care records, and the lack of ongoing treatment with a counselor or psychiatrist. Id. at 22-23.

State agency psychiatric consultants S. Juriga, Ph.D. and M. D'Ortona, Psy.D. each completed psychiatric review technique assessments, reviewing plaintiff's medical records and Dr. Moore's consultative examination, and assessed plaintiff with up to moderate limitations in the four broad areas of mental functioning and various sub-areas. Id. at 53, 78, 93-94.[4] ALJ Eldred found these opinions to be supported by detailed narratives, mental status examination findings, and "other evidence from the record". Id. at 22.

Family Nurse Practitioner ("FNP") Cynthia Ripple submitted a check-box questionnaire assessing plaintiff's mental limitations, which opined of "marked" limitations in maintaining regular attendance, performing activities on schedule, and remaining on task. Id. at 515-16. However, ALJ Eldred found Ms. Ripple's opinion unpersuasive because the assessed limitations were unsupported by any explanation other than a list of diagnoses, and that it was

---

[4] In one version of his report, Dr. D'Ortona did assess plaintiff with marked limitations in the ability to set realistic goals or make plans independently of others. [5] at 83. In another version, he assessed plaintiff as "[n]ot significantly limited" in that same ability. Id. at 99. Both versions are dated April 19, 2021. Id. at 84, 100.

inconsistent with plaintiff's activities of daily living, recent mental health examination findings, and lack of ongoing psychiatric treatment or counseling. Id. at 23. ALJ Eldred noted that Dr. Moore and Ms. Ripple both assessed greater than moderate limitations in some areas, but nonetheless determined that plaintiff's mental status examinations, treatment history, and reported activities and abilities reflected no more than moderate limitations. Id. at 20.

## ANALYSIS

### A.   Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938); *see also* Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Colgan v. Kijakazi, 22 F.4th 353, 359 (2d Cir. 2022).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. *See* Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

### B.   ALJ Eldred's Decision Is Unsupported by Substantial Evidence

Plaintiff argues that ALJ Eldred's Decision is unsupported by substantial evidence because: (1) his RFC determination failed to include limitations on plaintiff's ability to work consistently, to stay on task, and maintain acceptable attendance; and (2) he improperly assessed

the medical opinions of record. Plaintiff's Memorandum of Law ("MOL") [6-1] at 8-25. On both counts, I agree with plaintiff that the reasons cited by ALJ Eldred justifying those determinations are unsupported by substantial evidence, and that remand is required.

On appeal, "[t]he relevant inquiry is whether the ALJ applied the correct legal standards and whether [her] determination is supported by substantial evidence". Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013). It is well-established that the ALJ, not any medical source, is responsible for formulating a claimant's RFC. See 20 C.F.R. §§404.1546(c), 404.1527(d)(2) and §§416.946(c), 416.927(d)(2); see Curry v. Commissioner of Social Security, 855 F. App'x 46, 48 (2d Cir. 2021) (Summary Order). As such, the RFC need "not perfectly correspond with any of the opinions of medical sources cited in his decision", and the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole". Matta v. Astrue, 508 F. App'x. 53, 56 (2d Cir. 2013) (Summary Order); see Schillo v. Kijakazi, 31 F.4th 64, 78 (2d Cir. 2022). Ultimately, "[t]he question is . . . whether the ALJ's conclusion was 'supported by the record as a whole.'" Nieves v. Commissioner of Social Security, 2019 WL 4565112, *4 (S.D.N.Y. 2019) (quoting Tricarico v. Colvin, 681 F. App'x 98, 101 (2d Cir. 2017) (Summary Order)).

In addition, "[a]n ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability". Douglas C. v. Commissioner of Social Security, 717 F. Supp. 3d 289, 298 (W.D.N.Y. 2024) (quotation omitted). "As is now well-established, there is no longer a 'hierarchy of medical sources' in Social Security cases and 'the ALJ does not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion." Steven R. v. Commissioner of Social Security, 2025 WL 762195, *8

(E.D.N.Y. 2025) (*quoting* Colgan, 22 F.4th at 365); *see also* 20 C.F.R. §404.1520c(a). Thus, there is nothing inherently improper about an ALJ crediting the opinion of non-examining state agency consultant over that of an examining or even a treating medical source - provided there is substantial evidence in the record for doing so. *See* Camille v. Colvin, 652 F. App'x. 25, 28 (2d Cir. 2016) (Summary Order) ("the regulations . . . permit the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record"); Tana S. v. Berryhill, 2018 WL 4011560, *8 (N.D.N.Y. 2018) ( "it was . . . within the ALJ's purview to afford more weight to a non-examining opinion than an examining opinion, especially where he found the examining opinion to be inconsistent with the evidence of record.").

However, while "the evidentiary threshold for the substantial evidence standard 'is not high,' . . . [it] is also not merely hortatory: It requires relevant evidence which would lead a 'reasonable mind' to concur in the ALJ's factual determinations". Colgan, 22 F.4th at 359. "As deferential as the 'substantial evidence' standard is, . . .  federal courts . . . take a case-specific, comprehensive view of the administrative proceedings, weighing all the evidence to determine whether it was 'substantial'." Brault v. Commissioner of Social Security, 683 F.3d 443, 449 (2d Cir. 2012). While the ALJ is empowered to resolve "[g]enuine conflicts in the medical evidence", Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002), remand is required when the ALJ "ignores or mischaracterizes medical evidence or cherry-picks evidence that supports his RFC determination while ignoring other evidence to the contrary". Regina M. v. Commissioner of Social Security, 2025 WL 899008, *3 (W.D.N.Y. 2025) (citing cases).

Here, plaintiff repeatedly complained of severe anxiety, which gave rise to gastrointestinal distress, and which caused him to be unable to function for hours at a time or to

leave the house for several days out of the week. *See* [5] at 35-36, 39 (hearing testimony), 473-74 (statements to consultative examiner), 460-507 (primary care records). Consultative examiner Dr. Moore examined plaintiff and diagnosed him with emetophobia, generalized anxiety disorder, panic disorder, and persistent depressive disorder, and opined that these examination results were "consistent with psychiatric issues which may significantly interfere with the claimant's ability to function on a daily basis". [5] at 477. Specifically, Dr. Moore assessed plaintiff with "moderate to marked" limitations with respect to using reason and judgment, sustaining an ordinary routine and regular attendance, interacting adequately with others, regulating emotions, controlling behavior, and maintaining well-being. Id.

Similarly, FNP Ripple, who treated plaintiff over the course of years as part of his primary care treatment at Keuka Family Practice Associates, assessed plaintiff with "marked" limitations in maintaining regular attendance, performing activities on schedule, and remaining on task. Id. at 515-16. However, ALJ Eldred found Ms. Ripple's assessment unpersuasive on the basis that, in addition to being insufficiently explained, it was inconsistent with plaintiff's activities of daily living, recent mental health examination findings, and lack of ongoing psychiatric treatment or counseling. Id. at 23. For the same reasons, he found Dr. Moore's findings of moderate to marked limitations to be inconsistent with the record, despite finding her opinion "persuasive" in all other respects. Id. at 22-23.

While an ALJ may properly depart from the medical opinion evidence, his proffered reasons for doing so must fairly represent the evidence of record. *See*, *e.g.*, Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013). For the reasons below, I find that ALJ Eldred's explanation is unsupported by substantial evidence in the record.

1.      **Activities of Daily Living**

ALJ Eldred found that plaintiff's self-reported activities of daily living (specifically, helping his mother care for his niece and nephew, helping his parents around the house, working out, watching television, playing ping-pong and other games with his father, preparing meals, handling money, shopping online, driving, spending time outside, playing video games, and playing golf twice) demonstrated that he had a "reasonable ability to interact with other people, do activities outside of his home, and carry out at least simple tasks". [5] at 22. Certainly, the ALJ may consider activities of daily living in formulating the RFC, at least when those activities demonstrate an ability to perform certain tasks. *See* Rosa v. Commissioner of Social Security, 2022 WL 2274720, *10 (E.D.N.Y. 2022) (citing cases).

However, the activities cited by ALJ Eldred do not contravene many of the limitations assessed by Dr. Moore and FNP Ripple, particularly those regarding sustaining an ordinary routine, maintaining regular attendance, performing activities on schedule, and remaining on task. While those activities may demonstrate that plaintiff was able to perform some employment-related functions, "there is no evidence that [Plaintiff] 'engaged in any of these activities for sustained periods comparable to those required to hold a [full-time, competitive] job'". Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998); *see also* Loucks v. Kijakazi, 2022 WL 2189293, *2 (2d Cir. 2022) (Summary Order) ("although the ALJ noted that [the plaintiff] reported engaging in some limited and sporadic part-time work and that she engaged in some daily living activities such as reading and playing games on her phone, these activities did not show that [the plaintiff] could hold down a steady job for an extended period of time"); Claudio-Montanez v. Kijakazi, 2022 WL 17819123, *3 (2d Cir. 2022) ("[s]ome of the ALJ's bases for rejecting these restrictions are unsupported by the record, . . . , Claudio-

Montanez's activities, such as cooking, cleaning, doing laundry, shopping, enrolling in school, or caring for her mother . . . do[] not support the ALJ's finding that [her] daily activities are inconsistent with the above restrictions Dr. Hogan recommended").

### 2.     Mental Status Examination Findings

ALJ Eldred also cited the objective mental status examination findings in plaintiff's primary care records, characterizing them to reflect that "despite an anxious affect, [plaintiff] has a cooperative attitude, has clear and fluent speech, is not suicidal or homicidal, is alert and oriented, has intact memory skills, and has a normal attention span and concentration level". [5] at 22. This somewhat understates the objective findings. See id. at 470, 479, 482 ("[plaintiff d]isplays anxiety at inappropriate times"); 485 ("[plaintiff's] mood has become worse"); 470, 507 ("[plaintiff] displays anxiety and depression during encounter").

More importantly, ALJ Eldred completely ignored plaintiff's subjective mental status examination findings. As the Second Circuit has recognized, "[p]sychiatric testing is inherently based on subjective reports" and is almost always "informed by the patient's subjective description of his or her symptoms". Rucker v. Kijakazi, 48 F.4th 86, 92 (2d Cir. 2022). Plaintiff repeatedly reported to his providers "having [obsessive-complusive] behavior . . . anxiety, difficulty concentrating, depression, mood changes, obsessive thoughts, panic disorder and phobias" ([5] at 478, 481, 484, 506), being "extremely anxious and feels like he is getting worse" and "having a hard time doing anything outside of his home" (id. at 494, 503, 506, 469), as well as reporting an incident in which he "got really hot and passed out" (id. at 460, 463).

ALJ Eldred's unexplained omission of these complaints renders his Decision an incomplete picture of plaintiff's mental health. See Loucks, 2022 WL 2189293 at *2 ("the ALJ focused on the fact that Loucks's mental status examinations were largely normal. These

examinations, however, analyze the patient's mental state only at the time of the examination and do not consider symptoms the patient may experience outside of that brief period of time"); Estrella v. Berryhill, 925 F.3d 90, 97 (2d Cir. 2019) (quotation omitted) ("[c]ycles of improvement and debilitating symptoms of mental illness are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working").

### 3. Ongoing Psychiatric Treatment or Counseling

Finally, ALJ Eldred repeatedly relies on the "lack of treatment from a mental health counselor, psychologist, or psychiatrist" to discount the severity of plaintiff's symptoms and in assessing the medical opinions. [5] at 23. As conceded by the Commissioner, however, plaintiff presented to FNP Ripple nine times within the relevant period for care related to his mental impairments. See id. at 463-71, 478-86, 494-96, 503-09; Commissioner's MOL [7-1] at 11. Plaintiff was also taking a variety of medications for his anxiety and related conditions. See [5] at 37-38, 472-73.

Certainly, the "failure to seek further medical treatment . . . may raise some doubt about the severity of [the claimant's] disability". New Haven Terminal Corp. v. Lake, 337 F.3d 261, 266 (2d Cir. 2003). However, that does not seem to be the case here. The medical record reflects that plaintiff consistently reported having mental health symptoms, and there is no indication that plaintiff declined any recommended mental health treatment. The Commissioner cites no rule, nor do I find one, requiring a claimant to seek mental health treatment from a particular type of qualified medical professional.

-13-

## CONCLUSION

For these reasons, plaintiff's motion for judgment on the pleadings [6] is granted to the extent of remanding this claim to the Commissioner for further proceedings consistent with this Decision and Order, and is otherwise denied, and the Commissioner's motion for judgment on the pleadings [7] is denied.

**SO ORDERED**.

Dated: September 25, 2025

/s/ Jeremiah J. McCarthy
JEREMIAH J. McCARTHY
United States Magistrate Judge